UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| WALEDAHMAD A., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:22-cv-398-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM |
| | § | DECISION AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Waledahmad A. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner"), that denied his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 14).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 9, 10. Plaintiff also filed a reply brief. *See* ECF No. 11. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 9) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 10) is **GRANTED**.

## <u>BACKGROUND</u>

Plaintiff protectively filed an application for SSI on April 14, 2017, alleging disability beginning January 1, 2014 (the disability onset date), due to a variety of musculoskeletal issues, PTSD, and "stress disorders." Transcript ("Tr.") 106, 308-15, 328. Plaintiff's claim was denied initially on July 3, 2017, after which he requested an administrative hearing. Tr. 106. On January 25, 2019, Administrative Law Judge Rosanne M. Dummer ("ALJ Dummer") held a video hearing,

at which Plaintiff appeared and testified and was represented by Meghan Bona, a non-attorney representative. *Id*. Larry A. Underwood, an impartial vocational expert, also appeared and testified at the hearing. *Id*.

ALJ Dummer issued an unfavorable decision on April 22, 2019, finding that Plaintiff was not disabled. Tr. 103-129. On March 30, 2020, the Appeals Council remanded the case to offer Plaintiff the opportunity for a new hearing due to ALJ Dummer's failure to proffer post-hearing evidence to Plaintiff and his representative. Tr. 122-26.

Thereafter, on March 18, 2021, Administrative Law Judge Mary Mattimore ("the ALJ") conducted a telephonic hearing,[1] at which Plaintiff appeared and testified and was represented by Lewis Schwartz, an attorney. Tr. 15. Jeannie Deal, an impartial vocational expert, also appeared and testified at the hearing. *Id*. Plaintiff does not speak English and was assisted by an Arabic interpreter at the hearing. *Id*. On May 13, 2021, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled. Tr. 15-32. On March 30, 2022, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's May 13, 2021 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.  District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

---

[1] Due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19") pandemic, all participants attended the hearing by telephone. Tr. 15.

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II.    The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she

cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the

Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the

Commissioner must present evidence to demonstrate that the claimant "retains a residual

functional capacity to perform alternative substantial gainful work which exists in the national

economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168

F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and

made the following findings in her May 13, 2021 decision:

1. The claimant has not engaged in substantial gainful activity since April 14, 2017, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: cervical spine disc degeneration; thoracic and lumbar spondylosis; lumbar radiculopathy; myofascial pain syndrome; posttraumatic stress disorder ("PTSD"); unspecified trauma related disorder; and depressive disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity to light work as defined in 20 CFR 416.967(b)[2] except can lift and/or carry up to 10 pounds frequently and 11 to 20 pounds occasionally. The individual can stand for 6 hours out of an 8-hour workday for 2-hour intervals out of an 8-hour workday. The individual can walk for 6 hours out of an 8-hour workday for 2-hour intervals out of an 8-hour workday. The individual can sit for 6 hours out of an 8-hour workday for 2-hour intervals out of an 8-hour workday. The individual can frequently operate foot controls bilaterally. The individual can occasionally climb stairs, ramps, ladders, ropes, and scaffolds. The individual can occasionally kneel, crouch,

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

and crawl. The individual can frequently balance per the DOT and stoop. The individual can have occasional exposure to unprotected heights and with moving mechanical parts. The individual can occasionally operate a motor vehicle. The individual can have occasional exposure to humidity, wetness, fumes, odors, dust, gases, and other pulmonary irritants, and temperature extremes. The individual can work at a moderate noise level environment as defined in Appendix D of the Selected Characteristics of Occupations. The individual can perform simple routine work and make simple workplace decisions not at production rate pace (*i.e.*, assembly line pace). The individual can tolerate minimal changes in workplace processes and settings.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on July 21, 1974 and was 42 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a marginal education (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since April 14, 2017, the date the application was filed (20 CFR 416.920(g)).

Tr. 15-32.

Accordingly, the ALJ determined that, based on the application for supplemental security benefits protectively filed on April 14, 2017, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act. Tr. 32.

## ANALYSIS

Plaintiff asserts three points of error. *See* ECF No. 9-1 at 1, 19-29. First, Plaintiff argues that, despite finding persuasive the opinion of medical expert Jack E. Thomas, Ph.D. ("Dr. Thomas"), the ALJ failed to properly explain her failure to incorporate all the moderate limitations opined by Dr. Thomas, in particular, Dr. Thomas's assessment that Plaintiff could have only occasional contact with supervisors, coworkers, and the public. *See id*. at 19-24. Next, Plaintiff argues that the ALJ insufficiently considered Plaintiff's moderate limitations in concentration,

5

persistence, and pace and failed to conduct a detailed assessment of Plaintiff's mental health limitations when formulating the RFC. *See id*. at 24-26. Accordingly, argues Plaintiff, the ALJ's mental RFC finding was not supported by substantial evidence. Finally, Plaintiff argues that the ALJ failed to meet her burden at step five because she failed to reconcile vocational expert ("VE") testimony with apparent conflicts in the Dictionary of Occupational Titles ("DOT"). *See id*. at 26-29. The VE testified that, based on her professional experience, Plaintiff could perform certain jobs even though he does not speak English, but Plaintiff argues that the ALJ was not permitted to rely on VE testimony that was based solely on experience. *See id*.

The Commissioner argues in response that the ALJ's RFC finding was supported by substantial evidence, including the opinion of Dr. Thomas and other medical opinion evidence, as well as Plaintiff's treatment records showing largely normal findings, and his wide range of daily activities. *See* ECF No. 10-1 at 9-20. Additionally, the Commissioner argues that the ALJ's RFC finding was not required to mirror any single opinion, and the ALJ appropriately synthesized the multiple medical opinions in the record into an RFC finding that was consistent with the record as a whole. *See id*. Furthermore, argues the Commissioner, the ALJ reasonably accounted for the moderate limitations in concentration, persistence, and pace found at step two by limiting Plaintiff to simple, routine tasks and minimal changes in workplace processes and settings, which is consistent with the medical opinion evidence, the examination findings showing intact memory and good or fair concentration, and Plaintiff's daily activities. *See id*. at 17-20. With respect to Plaintiff's third point of error, the Commissioner responds that there was no apparent inconsistency between the VE's testimony and the DOT because SSR 20-01P provides that the inability to speak English is no longer relevant at step five, but even assuming *arguendo* that there was an apparent conflict, the ALJ elicited a reasonable explanation for the VE's testimony regarding the language requirements, and nothing more was required of the ALJ. *See id*. at 20-24.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ thoroughly considered the evidence of record and reasonably found that, despite his impairments, Plaintiff could perform a range of light work with additional postural, environmental, and mental limitations.[3] Furthermore, the ALJ was not required to base the RFC on any medical opinion, as Plaintiff argues. In addition to the opinion evidence, the ALJ properly considered Plaintiff's treatment records showing normal mental status findings, and his daily activities, which included driving, going to the mosque, and performing household chores. Accordingly, the ALJ's RFC finding was supported substantial evidence, and the Court finds no error in the Commissioner's final decision.

As noted above, Plaintiff argues that the ALJ's mental RFC finding was not supported by substantial evidence. *See* ECF No. 9-1 at 19-26. A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing

---

[3] The Court notes that Plaintiff only challenges the ALJ's mental RFC finding and does not challenge the ALJ's physical RFC finding. *See generally* ECF No. 9-1. Accordingly, the Court declines to address the ALJ's physical RFC finding in this opinion. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal); *Patterson v. Saul*, No. 19-CV-465-LGF, 2020 WL 5642187, at *4 (W.D.N.Y. Sept. 22, 2020) (because plaintiff's contentions were limited to the ALJ's treatment of mental impairments, any challenge to the ALJ's consideration of physical impairments was waived) (citing *Glover v. Saul*, 2020 WL 90768, at * 5 (W.D.N.Y. Jan. 8, 2020)); *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole);

*Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore*, 566 F.3d at 305-06 (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Plaintiff filed his application on April 14, 2017, and therefore, the 2017 regulations are applicable to his claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings.  The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency.  *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also*

42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Contrary to Plaintiff's arguments, the ALJ properly considered the opinion evidence and relied on other evidentiary sources to make an RFC finding that accounted for all of Plaintiff's credible limitations, as supported by the record. Tr. 21-30. *See* 20 C.F.R. §§ 404.1527, 416.927.

First, the ALJ relied on the March 18, 2019 interrogatories completed at the request of the Commissioner by licensed clinical psychologist and medical expert Dr. Thomas. Tr. 29, 1174-82. Dr. Thomas indicated diagnoses of post-traumatic stress disorder, unspecified trauma related disorder, major depressive disorder, and unspecified depressive disorder (Tr. 1174) and assessed moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself (Tr. 1175). As the ALJ noted, Dr. Thomas supported his opinion with citations to the record, noting that the record was "fairly consistent!" showing mental status examinations in the mild to moderate range of symptoms. Tr. 29, 1175 (citing Tr. 733, 637, 639, 648, 1067). Dr. Thomas further opined that Plaintiff could perform simple, routine, and repetitive tasks; he could have occasional contact with the public, coworkers, and supervisors; and he should not perform fast-paced or assembly line-type tasks. Tr. 1177.

The ALJ explained that she found Dr. Thomas's opinion persuasive, noting his specialty in the relevant field of clinical psychology, his extensive and specialized knowledge of the requirements of the disability program, and his review of the relevant evidence of record, as indicated by his knowledge and citation to the relevant evidence in his opinion. Tr. 29. *See* 20 C.F.R. § 416.920c(4) (explaining that in evaluating a medical opinion the ALJ will consider the medical source's specialty); 20 C.F.R. § 416.920c(c)(5) (explaining that in evaluating a medical opinion the ALJ will consider the medical source's familiarity with the disability program and with other evidence in the claim file).

The ALJ further explained that, "[m]ost significantly, [Dr. Thomas] provided a detailed and convincing rationale, which was generally consistent with the overall evidence of record for his opinion." Tr. 29, 1174-79. *See* 20 C.F.R. § 416.920c(c)(1) (explaining that in evaluating medical opinions, the more a medical source presents relevant objective evidence and supporting explanations to support his or her opinion, the more persuasive that opinion will be found). *See* 20 C.F.R. § 416.920c(c)(2) (explaining that the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinion will be found). As noted above, Dr. Thomas cited "fairly consistent" medical evidence documenting that Plaintiff had a mild to moderate mental impairment which required only outpatient treatment. Tr. 1175, 1177-78. The ALJ also noted that Plaintiff's mental status examinations after March 2019 were unchanged, which further supported Dr. Thomas's opinion of mild to moderate limitations. Tr. 29, 512-14, 640-41, 644-47, 654-57, 662-65, 923-25, 971, 974, 984, 991-92, 1000, 1005, 1008-09, 1015-16, 1067-68, 1091-92, 1454, 1597-98, 1611, 1614, 1623, 1634, 1642, 1646, 1711-12, 1721-22, 1728-29, 1746-47, 1753, 1759, 1767, 1775, 1783, 1787, 1797, 1804, 1813, 1831, 1857-59, 1867-76, 1880-87. *See* 20 C.F.R. § 416.920c(c)(2) (consistency).

As the ALJ also discussed, the medical evidence in the record consistently showed that Plaintiff had an alert sensorium, full orientation, stable mood and affect, normal speech, appropriate behavior, logical thought processes, normal thought content, intact or fair attention and concentration, intact memory, and intact abstract reasoning. Tr. 20, 25-26, 557, 640-41, 644-46, 654-55, 662-65, 693, 698, 701, 704, 690, 923-24, 971, 978-79, 982-83, 991-92, 1008, 1015-16, 1044-45, 1067-68, 1091-92, 1232, 1236, 1243, 1251, 1255, 1261, 1264, 1274, 1284, 31325, 1333, 1337, 1345, 1349, 1380, 1394, 1401, 1404, 1407, 1543-44, 1711-12, 1721-22, 1728-29, 1753, 1746-47, 1759, 1765, 1767, 1783, 1787, 1797, 1804, 1816, 1849-50, 1851- 54, 1855-56, 1857-58, 1859-60, 1861-62, 1863-64, 1865-66, 1867-68, 1869-70, 1871-72, 1873, 1875-76, 1877-78, 1887. These objective findings supported Dr. Thomas's opinion and, in turn, the ALJ's mental RFC finding that Plaintiff could do work that was simple and routine. Tr. 21.

In addition, the ALJ discussed treatment notes indicating that Plaintiff routinely presented as cooperative with appropriate behavior, pleasant, and having good eye contact, which did not support a limitation in interacting with others, as Dr. Thomas opined. Tr. 29, 639, 644, 646, 654, 656, 662, 664, 684, 687, 693, 695, 701, 710, 717, 885, 923, 978, 982, 991, 1008, 1015, 1044, 1067, 1091, 1103, 1243, 1258, 1264, 1267, 1277, 1287, 1465, 1469, 1472, 1478, 1481, 1498, 1501, 1506, 1509, 1512, 1515, 1518, 1526, 1529, 1543, 1545, 1547, 1551, 1553, 1557, 1559, 1849, 1851, 1853, 1855, 1857, 1859, 1861, 1863, 1865, 1873. Thus, the ALJ reasonably did not incorporate Dr. Thomas's opinion that Plaintiff could have only occasional contact with supervisors, coworkers, and the public (Tr. 1177), because that portion of his opinion was at odds with the evidence in the record.

The ALJ also properly considered Plaintiff's daily activities in support of his finding that Plaintiff was not restricted in his ability to interact with others, as Dr. Thomas opined.  Tr. 23, 1178. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily

activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at \*5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)); *Poupore*, 566 F.3d at 307 (claimant's abilities to watch television, read, drive, and do household chores supported ALJ's finding that his testimony was not fully credible).

As the ALJ noted, Plaintiff woke up between 6:00 and 7:00 a.m.' took his children and spouse to school; attended Mosque nearly every day for midday prayer; and regularly interacted with family and friends. Tr. 23, 29, 73, 535, 1649, 1811. Plaintiff also drove, shopped, cooked simple meals, did laundry, managed money, watched television, and read. Tr. 23, 441-42, 1673. Plaintiff also reported that he prayed daily, read the Koran, and went on walks. Tr. 12, 26, 73, 1811. He was also learning English through a phone app. Tr. 26, 51, 1076.

As the ALJ further noted, in August 2017, Plaintiff reported that he was looking for part-time or full-time work, suggesting that he believed he was able to work. Tr. 26, 72, 1076. Thus, Plaintiff's wide range of daily activities provided additional support for the ALJ's RFC finding. Tr. 21. *See Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020) (activities such as driving, cleaning, doing laundry, cooking, and shopping tended to support a finding that the claimant was capable of concentrating and staying on task sufficiently to perform work activities); *Cheatham v. Comm'r of Soc. Sec.*, 1:17-CV-0782 (WBC) 2018 WL 5809937, at \*10 (W.D.N.Y. Nov. 6, 2018) (ALJ's determination that plaintiff could maintain attention and concentration for simple, routine, repetitive tasks and interact to some degree with others was supported by plaintiff's activities, which included using public transportation, preparing meals, cleaning, shopping and playing basketball).

Based on the foregoing, it was reasonable for the ALJ to incorporate into the RFC only those portions of Dr. Thomas's opinion that were consistent with the record. *Veino*, 312 F.3d at 588 (2d Cir. 2002) (an ALJ has discretion to accept or reject various portions of a physician's opinion, based upon substantial evidence in the record).

Furthermore, while the ALJ did not agree with Dr. Thomas's assessment that Plaintiff could do work requiring only occasional contact, the ALJ nevertheless accounted for this limitation by considering only unskilled work at step five. Tr. 31, Unskilled work, in addition to being simple work, "ordinarily involve[s] dealing primarily with objects, rather than with data or people." SSR 85-15, 1985 WL 56857 *4. In fact, all three unskilled jobs identified by the VE have a "People" level of 8, meaning they require no significant people contact. DOT Code No. 209.587-034, 1991 WL 671802 (Price Marker);  DOT Code No. 712.687-010, 1991 WL 679245 (Assembler, Hospital Products); DOT Code No. 709.687-010, 1991 WL 679134 (Cleaner, Polisher); *Whitehorne v. Comm'r of Soc. Sec.*, No. 19-CV-0256MWP, 2020 WL 5077025, at *4 (W.D.N.Y. Aug. 27, 2020) ("[p]ositions categorized as involving level 8 interaction can be performed by individuals who require limited interaction with supervisors."). Thus, Plaintiff has failed to show that Dr. Thomas's limitation to work that entailed only occasional contact with others would have precluded the jobs identified.

Plaintiff next accuses the ALJ of "cherry-picking" the evidence to discredit Dr. Thomas's assessed limitation for interaction with others. *See* ECF No. 9-1 Plaintiff claims that the ALJ mischaracterized the evidence and selectively relied on the evidence that supported the RFC finding while rejecting the more limiting portions. *See id*. at 21. Contrary to Plaintiff's argument, there is no evidence of cherry-picking by the ALJ. Rather, it is Plaintiff who is improperly picking the cherries here by ignoring the consistently normal mental status findings and wide-ranging daily activities, as well as all the other medical opinions in the record that show that Plaintiff was much

less restricted than he claimed and, therefore, undermine his allegation of disability. *See Matos v. Comm'r of Soc. Sec.*, No. 18-CV-4701 (BMC), 2019 WL 4261767, at *3 (E.D.N.Y. Sept. 9, 2019); *Moxham v. Comm'r of Soc. Sec.*, No. 3:16-CV-1170 (DJS), 2018 WL 1175210, at *10 (N.D.N.Y. Mar. 5, 2018) ("although Plaintiff accuses the ALJ of impermissibly cherry-picking the opinion evidence, Plaintiff's own arguments would have the ALJ ignore of PA Secord's opinion indicating no limitations in various areas"). Plaintiff here fails to point to any evidence that the ALJ characterized incorrectly. *See* ECF No. 9-1 at at 20-21. Furthermore, as discussed above the ALJ's assessment of Dr. Thomas's opinion was supported by substantial evidence, including Plaintiff's consistently normal mental status examination findings and his wide range of daily activities.

Here, in addition to the evidence discussed above, the ALJ also relied on other medical opinion evidence indicating that Plaintiff was much less restricted than he claimed. For example, the ALJ considered the June 2017 opinion of psychiatric consultative examiner Janine Ippolito, Psy.D. ("Dr. Ippolito"), and found her opinion that Plaintiff had moderate limitations in his ability to sustain an ordinary routine and regular attendance at work and regulate emotions, control behavior, and maintain well-being "partially persuasive." Tr. 28, 532-36. Accordingly, the ALJ restricted Plaintiff to lower stress work that did not require a production-rate pace, did not require more than routine changes in a setting or in work processes, and required only simple decisions. Tr. 21, 28, 535. However, the ALJ found other portions of Dr. Ippolito's opinion "not persuasive," in particular, her assessment that Plaintiff's mental impairments would not interfere with his daily activities. Tr. 28. Based on Plaintiff's mental health treatment notes indicating that he takes psychotropic medications to manage his symptoms, and which affect his sleep and ability to understand and complete more than simple tasks, the ALJ concluded that Plaintiff was "somewhat more limited than [Dr. Ippolito's] opinion suggests." *Id.*

Notably, the RFC finding here was more restrictive than Dr. Ippolito's opinion with respect to the limitation to simple and routine work. Tr. 21. The Second Circuit and this Court have repeatedly affirmed decisions where the ALJ incorporated additional RFC restrictions beyond what a medical source identified. *See Snyder v. Saul*, 840 F. App'x 641, 643 (2d Cir. 2021); *Ramsey v. Comm' r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (upholding an RFC finding where "the ALJ occasionally deviated from consultative examiners' recommendations to *decrease* [the claimant's] RFC based on other evidence in the record") (emphasis in original)); *see also Threatt v. Comm'r of Soc. Sec.*, No. 19-CV-25JJM, 2020 WL 4390695, at *5 (W.D.N.Y. July 31, 2020); *see also Baker v. Berryhill*, No. 1:15-cv-00943-MAT, 2018 WL 1173782, at *2 (W.D.N.Y. Mar. 6, 2018) ("Where an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand.") (internal quotation marks and citations omitted); *Castle v. Colvin*, No. 1:15-CV-00113(MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) ("[T]he fact that the ALJ's RFC assessment did not perfectly match Dr. Balderman's opinion, and was in fact more restrictive than that opinion, is not grounds for remand.").

Likewise, the ALJ found that Plaintiff was more restricted than several other medical sources assessed. Tr. 26. In January 2020, psychiatric consultative examiner Christine Ransom, Ph.D. ("Dr. Ransom"), diagnosed Plaintiff with major depressive disorder, currently in remission (Tr. 1668), and opined to no limitations. Similarly, state agency reviewing psychologist Dr. A Dipeolu, Ph.D. ("Dr. Dipeolu"), reviewed the evidence in the record on July 3, 2020, and found that Plaintiff did not have a severe mental impairment. Tr. 98. Dr. Dipeolu specified that Plaintiff had a mild limitation in his ability to understand, remember, or apply information; no limitation in his ability to interact with others, a mild limitation in his ability to concentrate, persist, or maintain pace; and a mild limitation in his ability to adapt or manage himself. Tr. 97-98. In February 2020,

state agency reviewing physician L. Dekeon, Ph.D. ("Dr. Dekeon"), affirmed the opinion of Dr. Dipeolu. Tr. 132.

The ALJ found the opinions of Drs. Ransom, Dipeolu, and Dekeon "not persuasive," as they were "dated without consideration of the most recent evidence of record or [Plaintiff's] testimony." Tr. 29. As the ALJ noted, Plaintiff was engaged in ongoing outpatient mental health treatment which included prescription medication for management of his depressive and trauma symptoms that affect his sleep and ability to understand and complete more than simple tasks. *Id*. Thus, based on the evidence as a whole, the ALJ included greater limitations than assessed by Drs. Ransom, Dipeolu, and Dekeon. Tr. 29. As previously discussed, the fact that the ALJ included greater limitations than the medical sources assessed does not mean that the RFC finding is unsupported, or that these opinions were not valuable. Rather, the opinions of Drs. Ransom, Dipeolu, and Dekeon constitute additional evidence that undermine Plaintiff's allegation of disability, and that are at odds with the assessment of Dr. Thomas that Plaintiff was restricted to only occasional contact with others.

Upon review, the Court finds that the ALJ synthesized the multiple medical opinions in the record into an RFC finding that may not have mirrored any single opinion, but that was consistent with the record as a whole. *See Angelia J. v. Comm'r of Soc. Sec.*, No. 19-CV-00272, 2021 WL 2715801, at *3 (W.D.N.Y. July 1, 2021) (citation omitted); *Nesbit-Francis v. Comm'r of Soc. Sec.*, No. CV 15-1703, 2017 WL 590327, at *11 (E.D.N.Y. Feb. 14, 2017) (affirming RFC finding as a reasonable "synthesis" of the opinions in the record showing varying mental limitations). Furthermore, the ALJ was not required to craft an RFC that mirrored a medical opinion and was not bound to adopt the entirety of any opinion, as Plaintiff argues. *Schillo v. Kijakazi*, 31 F.4th 64, 77-78 (2d Cir. Apr. 6, 2022) (affirming where the ALJ declined to adopt the limitations set forth in three treating source opinions, and the RFC finding did not match any opinion in the record);

*see also Pellam v. Astrue*, 508 F. App'x 87, 89 (2d Cir. 2013) (holding that the ALJ properly declined to credit certain conclusions in a medical source's opinion that were inconsistent with other evidence of record). Here, the ALJ's RFC finding is supported by the opinion evidence, including the opinion of medical expert Dr. Thomas, the opinions of consultative examiners Dr. Ippolito and Dr. Ransom, and the assessments of state agency physicians Dr. Dipeolu and Dekeon, as well as Plaintiff's treatment notes showing largely normal findings and his wide range of daily activities.

In his next challenge to the ALJ's mental RFC finding, Plaintiff argues that, because the ALJ found at step three that Plaintiff had a moderate limitation in concentration, persistence, and pace (Tr. 20), the ALJ should have accounted for this moderate limitation when she determined Plaintiff's RFC. *See* ECF No. 9-1 at 24. Plaintiff's argument is meritless. The ALJ thoroughly considered the evidence regarding Plaintiff's mental impairments and reasonably concluded that, despite these impairments, Plaintiff was able to perform "simple routine work and make simple workplace decisions not at production rate pace (i.e. assembly line pace) [and could] tolerate minimal changes in workplace processes and settings." Tr. 21.

First, as the ALJ noted, steps two and three of the sequential analysis require a different analysis than the RFC determination. Tr. 21. The limitations identified at steps two and three are used to rate the severity of a claimant's mental impairments, while the mental RFC assessment at steps four and five requires a more detailed assessment of the areas of mental functioning. *Id*. The regulations make clear that the four factors applied at the third step are only used to evaluate the severity of a claimant's mental impairment, not the claimant's RFC at the fourth and fifth steps. *See Whipple v. Astrue*, 479 F. App'x 367, 369 (2d Cir. 2012) (citing 20 C.F.R. § 404.1520a(d)); *see also* 20 C.F.R. § 404.1520(a)(4)(iii)-(v) (stating that the Commissioner considers "medical severity" of a claimant's impairment at step three of the disability analysis, which precedes any

RFC determination). Accordingly, a "mild" or "moderate' limitation found at steps two or three need not be included verbatim into the RFC. *See Whipple*, 479 F. App'x. at 369.

Furthermore, as discussed extensively above, the ALJ relied on multiple medical opinions and other evidence, including Plaintiff's treatment notes showing intact memory and good or fair concentration and his daily activities, to formulate the RFC finding, and ultimately concluded that this evidence supported the determination that Plaintiff was capable of performing simple, routine tasks, not at a production-rate pace, and involving minimal changes in workplace processes and settings. Tr. 21. As previously noted, the ALJ agreed with the moderate limitations assessed by Dr. Thomas and Dr. Ippolito but found that Plaintiff was more restricted than assessed by Drs. Ransom, Dipeolu, and Dekeon. The ALJ also considered that medical evidence in the record consistently showed that Plaintiff had an alert sensorium, full orientation, stable mood and affect, normal speech, appropriate behavior, logical thought processes, normal thought content, intact or fair attention and concentration, intact memory, and intact abstract reasoning. Tr. 20, 25-26. Additionally, the ALJ noted that, throughout the relevant period, Plaintiff denied medication side effects and reported that he was doing well with improved depression, anxiety, and sleep patterns, no mood swings, no paranoia, and no anxiety. Tr. 26. Accordingly, the Court finds that the ALJ properly considered the evidence and provided an adequate explanation for her RFC determination.

While Plaintiff claims that the limitation to simple and routine work is not enough, he provides no support for his argument and does not explain what other limitation the ALJ should have included in the RFC finding to account for the moderate limitation in concentration, persistence, and pace. *See* ECF No. 9-1 at 24-25. There was nothing unreasonable in the ALJ's interpretation that the moderate limitation in concentration, persistence, and pace translated into the RFC finding for simple and routine work. Under the substantial evidence standard of review,

"[i]f the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). Moreover, an opinion of mild to moderate limitations in mental functioning is not inconsistent with an RFC for unskilled work. *McIntyre*, 758 F.3d at 152 (moderate limitations in social functioning and concentration, persistence and pace consistent with an RFC for unskilled work); *see also Whipple*, 479 F. App'x at 370 (assessment of mild to moderate limitations were accounted for by RFC limitations to simple tasks in a low-stress environment); *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (affirming a finding of unskilled work where the evidence showed moderate or less severe limitations in plaintiff's work-related functioning); *Calabrese v. Astrue*, 358 F. App'x 274, 277 (2d Cir. 2009) (moderate limitations in different work-related areas were reasonably found to not preclude unskilled work); *Mayer v. Comm'r of Soc. Sec.*, No. 18-CV-0062, 2019 WL 2266795, at *5 (W.D.N.Y. May 28, 2019) ("The Second Circuit has repeatedly held that 'moderate' limitations do not preclude a plaintiff's ability to perform unskilled work.") (collecting cases).

Based on the foregoing, the ALJ properly analyzed the entire record and reasonably assessed Plaintiff's RFC in accordance with the Commissioner's regulations. *See* 20 C.F.R. § 416.946(c) (the responsibility for determining a claimant's RFC rests solely with the ALJ); *see also Richardson*, 402 U.S. at 399 (it is within the sole province of the ALJ to weigh all evidence and resolve material conflicts); *see Galiotti v. Astrue*, 266 F. App'x 66, 67 (2d Cir. 2008) (it is the province of the ALJ to consider and resolve conflicts in the evidence as long as the decision rests upon "adequate findings supported by evidence having rational probative force"). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which he has failed to do.

In his third and final point, Plaintiff argues that the ALJ should not have relied on the testimony of the VE because there was an apparent conflict between the VE's testimony and the

DOT that the ALJ failed to resolve, as she was required to do under SSR 00-4p. *See* ECF No. 9-1 at 26-30. Plaintiff claims that he only speaks Arabic, but the jobs that the VE identified all required a Level 1 language skills, which requires recognizing up to 2,500 words and some reading. *See* DOT 209.587-034, 1991 WL 671802 (price marker); DOT 712.687-010, 1991 WL 679245 (assembler, hospital products); DOT 709.687-010, 1991 WL 679134 (cleaner, polisher).

In response, the Commissioner argues that changes in the SSA's regulations, effective April 27, 2020, have rendered this argument obsolete, by removing the ability to communicate in English from the list of educational factors to be considered at step five.[4] *See* ECF No. 10-1 at 21(citing SSR 20-01P, 2020 WL 1285114, at *3). Plaintiff contends that SSR 20-01p only removes English language proficiency as a relevant factor when determining a claimant's education for purpose of application of the Medical-Vocational Guidelines, but here, the Medical-Vocational Guidelines do not apply, given Plaintiff's non-exertional limitations, and therefore, the ALJ was still required to consider Plaintiff's language abilities at step five. *See* ECF No. 11 at 7.

The Court finds no error in the ALJ's step five determination. The ALJ found that Plaintiff had a "marginal education" under the applicable regulations (Tr. 30), which means "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs." 20 C.F.R. § 404.1564. The SSA generally considers that formal schooling at a 6th grade level or less is a marginal education. *Id*. However, SSR 20–01p states:

> When determining the appropriate education category, we will not consider whether an individual attained his or her education in another country or whether the individual lacks English language proficiency. Neither the country in which an individual was educated nor the language an individual speaks informs us about whether the individual's reasoning, arithmetic, and language abilities are commensurate with his or her formal education level.

[4] The revised regulations apply to claims that were pending on or after the effective date of April 27, 2020. *See* Social Security Ruling ("SSR") 20-01p: How We Determine an Individual's Education Category, 85 Fed. Reg. 13692-02, available at 2020 WL 1083309 (Mar. 9, 2020).

20 C.F.R. § 404.1564; *see also* SSR 20-01p, 2020 WL 1083309.

As one court noted, "[w]hen finalizing the regulation amendment, the [SSA] explained that changes in the national economy indicate that employment rates for people with limited English proficiency have increased since 1980, which suggests that English proficiency is no longer a useful category describing a claimant's 'educational attainment or of the vocational impact of an individual's education for the purposes of our programs,' as it was in 1978, when the former regulation was written." *Salimeh N. v. Comm'r of Soc. Sec.*, No. C21-1523 (SKV), 2022 WL 1963719, at *4 (W.D. Wash. June 6, 2022) (citing Removing Inability to Communicate in English as an Education Category, 85 Fed. Reg. 10,586-01, 10,587, available at 2020 WL 885690 (Feb. 25, 2020)); *see also Pichardo v. Comm'r of Soc. Sec.*, No. 21-CV-06873 (SDA), 2023 WL 2596970, at *20 (S.D.N.Y. Mar. 22, 2023). Thus, there is no apparent conflict between the VE's testimony and the DOT because the inability to speak English is no longer relevant at step five. Accordingly, the Court finds no error in the ALJ's reliance on the VE's testimony at step five.

Moreover, even assuming *arguendo*, that SSR 20-1p did not apply, and Plaintiff's ability to speak English was still a relevant factor (which it is not), Plaintiff's argument still fails because the ALJ undertook a meaningful investigatory review when she questioned the VE about the language requirements of the jobs. Tr. 59. When there is an "apparent conflict" between the testimony of a VE and the DOT, the ALJ is "obliged to identify and resolve the apparent conflict . . . even if there is a chance that, upon inquiry, no actual conflict would have emerged." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 93 (2d Cir. 2019); *see* SSR 00-4p, 65 Fed. Reg. 75759 (Dec. 4, 2000) ("At the hearing level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is . . . consistency [between the VE's testimony and the DOT]."

Here, the ALJ specifically asked the VE whether the identified jobs could be taught by a demonstration, to which the VE responded that they could be taught by a demonstration. Tr. 58. The ALJ then asked the VE whether her testimony was consistent with the DOT, and if not, what she relied upon to support his testimony. Tr. 60. The VE explained that the DOT does not cover all issues, so for those not covered, she relied on her experience. *Id*. The VE added that in general her testimony was consistent with the DOT, but she relied on her experience when she testified that the identified jobs could be taught by "short demonstration due to language." *Id*. Thus, the ALJ elicited a reasonable explanation for the potential apparent conflict and reasonably relied on the VE's testimony to formulate Plaintiff's RFC, in accordance with SSR 00-4p. Tr. 31. "This is precisely the type of analysis that the Second Circuit in *Lockwood* indicated should have been done by a VE." *Alisa O. v. Comm'r. of Soc. Sec.*, No. 20-cv-00564 (FPG), 2021 WL 3861425, at *5, (W.D.N.Y. Aug. 30, 2021) (citing *Lockwood*, 914 F.3d at 92-3); *see also Reilly v. Comm'r of Soc. Sec.*, No. 21-8-CV, 2022 WL 803316, at *2 (2d Cir. Mar. 17, 2022) (finding that "the ALJ elicit[ed] an explanation that would justify crediting the [vocational expert's] testimony) (internal quotation marks omitted); *see also Katherine J. v. Comm'r of Soc. Sec.*, No. 20-CV-845S, 2022 WL 543247, at *5 (W.D.N.Y. Feb. 23, 2022) (finding that the ALJ complied with *Lockwood* where he elicited testimony from the vocational expert that the DOT does not address overhead reaching and off-task time).

Finally, with respect to Plaintiff's argument that the application of the amended rule constitutes "impermissible retroactive rulemaking" (*see* ECF No. 11 at 8), that argument too must fail. The rule change affected how ALJ's perform their disability analysis. Thus, "it is the application of the five-step process that the regulatory change is directed toward, not the substantive basis for disability eligibility." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 649 (6th Cir. 2006). In finalizing the revised regulation, the Commissioner noted: "we no longer consider

English proficiency to be the best proxy for assessing an individual's education level as part of our disability determination process." 85 Fed. Reg. 10586-01 (Feb. 20, 2020). The goal of the revision was to "better assess the vocational impact of education in the disability determination process, in a manner consistent with the current national economy." *Id*. Thus, the activity subject to the revised rule was the adjudication and assessment of disability claims, not the claims themselves. *See, e.g.*, *Pichardo*, 2023 WL 2596970, at *20 ((determining that the ALJ on remand was not required to assess the plaintiff's English ability, even though the bulk of the proceedings had occurred before the amendment went into effect); *Gina C. v. Comm'r of Soc. Sec. Admin.*, No. 3:21CV00423(SALM), 2022 WL 167922 (D. Conn. Jan. 18, 2022) (same). Accordingly, the Court finds no error in the ALJ's step five determination.

As detailed above, substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the factfinder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

**CONCLUSION**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 10) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE